UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
BARNEY J. NG, as the Sole Trustee of :
the Barney J. Ng Living Trust, :
: 10 Civ. 8347 (TPG)
Plaintiff, :
: **OPINION**
– against – :
:
STEPHEN SCHRAM, :
:
Defendant. :
------------------------------------------------x

      Barney Ng, as trustee of the Barney J. Ng Living Trust, sues to recover $5 million allegedly owed by defendant Schram on a guarantee. In his answer, Schram denies liability, alleging that he has been released from his guarantee. The answer includes a counterclaim, alleging that Ng breached the agreement releasing Schram.

      Ng moves to dismiss the counterclaim under Fed. R. Civ. P. 12(b)(6). Schram opposes the motion. He has filed an affidavit with exhibits, and asserts that the motion should be treated as one for summary judgment.

      The court has considered the Schram affidavit and exhibits and thus treats the motion as one for summary judgment. As such, the motion is denied. The court believes that there are factual issues which cannot be resolved on the present record.

**THE ALLEGATIONS**

<u>Ng's Complaint</u>

The following facts are set forth in Ng's complaint, except where otherwise indicated.

Ng is the former president of Bar-K, Inc. ("Bar-K"), a California corporation that pursued real estate investment opportunities for R.E. Loans, LLC ("RE Loans"), a real estate investment fund based in California.

In December 2004, Ng, on behalf of Bar-K, arranged for RE Loans to provide $64 million in financing to the Canyon Club, Inc. ("CCI"), a Wyoming corporation owned and controlled by Richard Edgcomb. This financing took the form of a promissory note (the "Note"). An exhibit to the complaint shows that the Note was given by CCI to RE Loans, although neither the complaint nor any exhibit thereto specifies the exact amount or terms of the Note. Certain financial statements provided with the Schram affidavit indicate that the Note was for about $64 million. This financing was part of a restructuring plan for a resort development project near Jackson Hole (the "Jackson Hole Property") that CCI was involved in. The project was bankrupt.

As part of this reorganization, a New York development firm, Dolan Pollak and Schram Development Company, LLC ("DPS") assumed control over the management and marketing of the Jackson Hole Property. In addition, DPS and CCI formed the Snake River Sporting Club

Development Company, LLC (the "Company") to complete the resort development. Schram was appointed Managing Member of the Company.

It appears that Bar-K was to be paid $9 million for procuring the $64 million financing. Bar-K agreed to have the payment of the $9 million fee deferred until December 31, 2009. Ng memorialized this deferment in a non-interest bearing note dated December 22, 2004 (the "Second Note"). The Second Note is an exhibit to the complaint. The note was made out to Bar-K and was signed by Edgcomb for CCI. The maturity date of the Second Note was December 31, 2009. On January 7, 2005, Bar-K assigned $5 million of the Second Note to the Barney J. Ng Living Trust.

In 2007, Edgcomb and CCI decided to terminate their relationship with the Company and the Jackson Hole Property. Ultimately Edgcomb and CCI entered into a separation agreement dated December 4, 2007 (the "Separation Agreement"). Edgcomb, CCI, DPS, the Company, Ng, and the Trust were all parties to the Separation Agreement.

The Separation Agreement is complex. The complaint contains allegations summarizing parts of the Separation Agreement, and the Separation Agreement itself is an exhibit to the complaint.

Pursuant to this agreement, Ng agreed to relieve Edgcomb and CCI of any obligation on the Note and the Second Note. The complaint states (par. 14) that the "Company remained liable for the Note and Second

Note." Nevertheless, the complaint does not allege how this came about, since it was CCI and not the Company which was the promissor on the Note and the Second Note. The court will assume, however, for the purposes of this motion, that in some way the Company became liable on the Note and the Second Note. In any event, the complaint states that Schram agreed to guarantee full payment of the Note and Second Note pursuant to the Separation Agreement. Indeed, Paragraph 8 of the Separation Agreement, which is attached to the complaint as an exhibit, so states.

However, the Separation Agreement provided that within 30 days of the effective date of the agreement a company named SRCR Investments, LLC ("SRCR Investments"), which the complaint alleges was controlled by Edgcomb, would pay down the Note (owed to RE Loans) to the extent of $1.82 million. The Separation Agreement went on to provide that the Company would repay the $1.82 million by paying Edgcomb 7.5% of the gross sales price from each future sale of a lot or sale of a club membership. In a complicated paragraph, most of which is not germane to the issues now before the court, there was a reference to the then current balance on the Second Note as being $7,862,000.

Paragraph 15 of the complaint contains the following allegations, which were germane to defenses and the counterclaim asserted by Schram:

> During the negotiation of the Separation Agreement, Ng discussed with Schram the possibility of relieving Schram of his guarantee

> obligation if the One Million Eight Hundred Twenty Thousand dollars ($1,820,000) related to lots 13 and 19 was paid within two years.  Attached hereto as Exhibit D is a true and correct copy of a November 17, 2007 email from Ng to counsel for DPS copied to Scharm reflecting this discussion, which is incorporated herein by this reference.

Exhibit D to the complaint contains two e-mails.  The first is from someone named Tyler Congleton, who is not identified but apparently was involved in the negotiations leading to the Separation Agreement.  This first e-mail is dated November 15, 2007 and was sent to Ng and copied Schram.  This e-mail attached a term sheet "with key points as understood by Steve [Schram]" and by Congleton regarding the settlement.  The term sheet is not part of the exhibit to the complaint.

The second e-mail is from Ng to Congleton with a copy to Schram.  It is dated November 16, 2007.  It states that the "following terms should be added to the agreement."  The second of such terms was described as follows:

> 2: Steve Schram will personally guarantee the existing loans of RE Loans and Barney Ng.  ( by Separate agreement between the lenders and Steve Schram a further agreement will release Steve Schram's personal guarantee if $1,820,000.00 in principal is paid down on lots 13 and 19 within 2 years of this agreement).  If this is unacceptable to Steve, please contact me to discuss.

In this e-mail, Ng also asserts the following with regard to these terms:

> I believe it most efficient if these are added to a universal agreement.  It identifies the terms of the overall agreement to everyone ( except for the separate agreement between Steve Schram and the lenders).  I think this is important due to the nature in which this agreement was negotiated.

The Separation Agreement in its final form contained no provision embodying what is described above. Ng argues that a "release" was not in fact agreed upon. Schram argues that it was, and that it was a separate agreement not intended to be included in the Separation Agreement.

The Separation Agreement contains a merger clause stating that the Separation Agreement "constitutes the entire agreement among the parties" with respect to the agreement's subject matter. The Separation Agreement also states that it "may be amended only by a writing signed and delivered by all parties." Ng argues that these provisions bar Schram's reliance on a Release Agreement. Schram argues that they do not apply.

The complaint refers to something called the "Company Note," which was given by the Company to SRCR Investments in the amount of $2,282,000. This reflected the $1.82 million referred to earlier, plus the sum of $462,000, representing an amount not germane to the present action.

The complaint alleges that the Company never paid the $1.82 million to Edgcomb or SRCR Investments, and that in September 2008, SRCR Investments sued the Company. It is further alleged that in October 2008 Schram caused the Company to file a Chapter 11 bankruptcy petition. However, it is alleged that on September 24, 2008, shortly before the bankruptcy petition, Schram sent Ng a proposed letter

agreement asking Ng to acknowledge that Schram's guarantee had been extinguished when SRCR Investments caused $1.82 million to be paid to reduce the "Mortgage," meaning paid to RE Loans pursuant to what was agreed to in the Separation Agreement. The complaint alleges that Ng did not assent to this proposed agreement.

As indicated by the letter, Schram asserts that the $1.82 million was paid. Ng denies that such payment was made.

It is alleged that the Company has not honored its obligations on the Note or the Second Note, such obligations having been discharged in bankruptcy.

On October 25, 2010, Ng sent a formal demand to Schram asking him to honor his guarantee on the Note and the Second Note. Schram refused.

The complaint requests that judgment be entered against Schram in the amount of $5 million. This is apparently based on the fact that the plaintiff in this action is Ng, as trustee of the Barney J. Ng Living Trust, and the further fact that on January 7, 2005, one of Ng's companies, Bar-K, assigned $5 million from the Second Note to the Trust.

The complaint says nothing about what happened to the Note, with its face amount of about $64 million. The complaint says nothing about the balance on the Second Note above the $5 million.

Schram's Answer and Affidavit

Schram filed his answer to Ng's complaint on December 28, 2010. The answer denies liability and contains affirmative defenses based on the alleged release referred to earlier. The answer contains a counterclaim alleging as follows:

> 36. At or about the time the Separation Agreement was executed, Plaintiff and Defendant made a separate contract with each other (the "Release Agreement") that was partly oral and partly written.
>
> 37. The terms of the Release Agreement were that Plaintiff (as holder of the Second Note) would release Defendant from the written guarantee of the Second Note contained in Paragraph 8 of the Separation Agreement if and when a payment of $1,820,000 was made to R.E. Loans, LLC as provided in Paragraph 6 of the Separation Agreement.
>
> 38. The payment of $1,820,000 was duly made.

Schram has submitted a detailed affidavit with his history of the events. Audited financial statements for the Company for the years 2006 and 2007 are attached as exhibits to the affidavit. These financial statements contain a detailed history and analysis of the Company, and a great deal of relevant financial information. The court has studied the affidavit and the financial statements, but will not undertake to summarize them in this opinion.

## DISCUSSION

Ng argues that the merger clause in the Separation Agreement and the provisions of the Separation Agreement about amendment only by a writing signed by the parties prevent Schram from introducing parol evidence of the alleged Release Agreement. Schram argues that there

was a separate Release Agreement, which was not in conflict with the Separation Agreement, and that therefore the Release Agreement can and should be enforced.

In his motion, Ng contends that the Release Agreement is invalid as a matter of law and that the counterclaim asserting such agreement should be dismissed. Schram argues that the motion should be treated as one for summary judgment and should be denied.

In the view of the court, there are factual issues which cannot be resolved on the present record. These issues mainly relate to the purpose and intent lying behind Ng's e-mail proposing what he calls a separate agreement and a further agreement. There are also issues about what occurred between the time of Ng's November 16, 2007 e-mail and the execution of the Separation Agreement. It is also certainly true that the Separation Agreement is highly complex, and that there may be issues relating to its interpretation and also relating to how it was carried out with respect to the Note and the Second Note. There is also a dispute about whether the $1.82 million was or was not paid.

## CONCLUSION

The court denies Ng's motion to dismiss the counterclaim as a matter of law. Since the court has considered the various matters beyond the allegations in the counterclaim, the court treats the motion as one for summary judgment and denies that motion.

This opinion resolves document number 6 on the docket.

SO ORDERED.

Dated: New York, New York
       September 21, 2011

Thomas P. Griesa
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/21/11